ROZIER v DEPARTMENT OF PUBLIC HEALTH

Docket No. 82558. Submitted April 8, 1987, at Lansing. Decided July 20, 1987. Leave to appeal applied for.

John Rozier, Jr., brought a product liability action in the Court of Claims against the State of Michigan, Department of Public Health, for damages for injuries sustained as a result of a smallpox vaccination plaintiff received in 1963. The vaccine was manufactured and distributed by defendant. The trial court, Philip C. Elliott, J., entered a judgment in favor of plaintiff for $590,260. Defendant appeals.

The Court of Appeals *held:*

1. The trial court did not err in ruling that defendant was not covered by governmental immunity. The trial court's conclusion that the case of *Pittman v City of Taylor,* 398 Mich 41 (1976), in which common-law governmental immunity was abrogated, applies to deprive defendant of the defense of governmental immunity was correct. *Pittman* may be applied to cases which were filed after *Pittman* was decided, but in which the cause of action accrued before such date.

2. Defendant's argument that the governmental tort liability act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*, as amended in 1970, applies to plaintiff's claim because he did not bring suit until January, 1979, is meritless. The issue of governmental immunity must be resolved according to the law as it existed at the time the cause of action accrued.

3. The trial court's findings of fact were not clearly erroneous.

4. The Court of Appeals determined that plaintiff should not be allowed to file a tardy appellate brief since the Court

REFERENCES

Am Jur 2d, Municipal, School, and State Tort Liability §§ 24 *et seq.*; 53 *et seq.*

Modern status of rule excusing governmental unit from tort liability on theory that only general, not particular, duty was owed under the circumstances. 38 ALR4th 1194.

State's immunity from tort liability as dependent on governmental or proprietary nature of function. 40 ALR2d 927.

determined that plaintiff's reasoning for failing timely to file an appellate brief was not sound.

Affirmed.

1. TORTS — GOVERNMENTAL IMMUNITY — COMMON LAW — PROSPEC-TIVITY.

The Supreme Court's decision in *Pittman v City of Taylor,* 398 Mich 41 (1976), which abrogated the common-law defense of governmental immunity, is to be applied prospectively from November 23, 1976, with the exception of the *Pittman* case itself and any cases pending on that date in which an express challenge to the common-law defense of governmental immunity had been made and preserved; the decision applies to cases commenced after that date whose causes of action accrued before that date.

2. APPEAL — RETROACTIVITY.

Appellate court decisions generally are to be given full retroactive effect unless limited retroactivity is preferred where justified by (1) the purpose of the new rule, (2) the general reliance on the old rule, and (3) the effect that retroactivity will have on the administration of justice.

3. ACTIONS — GOVERNMENTAL IMMUNITY.

The issue of governmental immunity must be resolved according to the law as it existed at the time that the cause of action accrued.

4. APPEAL — FINDINGS OF FACT.

The findings of fact of a trial court sitting without a jury will not be set aside unless they are clearly erroneous; a finding is clearly erroneous if, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed (MCR 2.613[C]).

*Charfoos & Christensen, P.C.* (by *L. S. Charfoos, Charles L. Nichols* and *David R. Parker*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *James L. Stropkai, Vincent J. Leone* and *Constance Y. Ross,* Assistant Attorneys General, for defendant.

Before: M. J. KELLY, P.J., and HOOD and ,E. F. OPPLIGER,* JJ.

PER CURIAM. On December 26, 1984, the Court of Claims entered judgment in the amount of $590,260 in favor of plaintiff in plaintiff's product liability suit against defendant, arising out of injuries sustained by plaintiff as a result of a smallpox vaccination he received in 1963. Defendant appeals as of right.

Plaintiff was born on July 29, 1962. In the next year and a half, plaintiff developed various infections, requiring treatment. The first of these treatments occurred April 28, 1963, when he entered McLaren Hospital in Flint with bronchitis. Plaintiff was hospitalized for twenty-one days and had a fever for the first seven days. Plaintiff's family physician advised plaintiff's parents not to have plaintiff immunized against any diseases until he was feeling better. On June 3, 1963, plaintiff was treated for a cold and sore throat. On June 17, 1963, plaintiff was given medication for a respiratory tract infection. On June 22, 1963, plaintiff was treated for otitis media, an ear infection, and received treatment for the ailment again on July 26, 1963. On August 10, 1963, plaintiff was treated for an upper respiratory infection. Plaintiff was last seen on August 22, 1963, but it is not known whether a diagnosis was made at that time.

Plaintiff remained apparently healthy until October 22, 1963, when his mother took him to the Genesee County Health Department for a smallpox vaccination. The vaccine was manufactured and distributed by defendant. Plaintiff had been vaccinated for DTP and polio in January, February and March, 1963.

According to plaintiff's mother, a few weeks

---

* Circuit judge, sitting on the Court of Appeals by assignment.

after the smallpox vaccination a scab formed and then fell off. However, a few days later another scab formed and plaintiff developed a red rash. Plaintiff's mother called the county health department and was told to place a plastic shield over the vaccination spot. A few days later, plaintiff started to run a temperature, and on December 22, 1963, was admitted to McLaren Hospital. Plaintiff was admitted with otitis media and tracheo bronchitis. On the tenth day of plaintiff's hospitalization, his parotid glands became swollen and doctors believed that he had the mumps. Also on the tenth day, plaintiff's vaccination site was first mentioned on his chart—it was noted that the vaccination was "still active."

After three weeks in McLaren Hospital, plaintiff was transferred to Hurley Hospital's isolation unit. On January 22, 1964, plaintiff was diagnosed as having agammaglobulinemia, which is an immune deficiency. Children with immune deficiencies like agammaglobulinemia should not be vaccinated for smallpox, as they cannot put up an adequate defense against the smallpox vaccine which itself contains a live virus. Frequent infections are a symptom of agammaglobulinemia. Because the nurses who vaccinated plaintiff did not know that plaintiff had agammaglobulinemia, plaintiff was vaccinated. He developed generalized vaccinia, which is the spread of the vaccinia virus throughout the whole body, and vaccinia necrosum, which is the death of tissue caused by the progressive vaccinia. Plaintiff was transferred to the University of Colorado Medical Center on January 24, 1964, where he was treated by Dr. C. Henry Kempe, an expert on complications resulting from smallpox vaccinations, and by Dr. Vincent Fuljiniti. Drs. Kempe and Fuljiniti determined that plaintiff suffered from agammaglobulinemia.

Plaintiff's left arm had become swollen while still in Flint, and bumps appeared on his nose. Before going to Colorado, plaintiff's vaccination spot had grown to the size of a fifty-cent piece. In Colorado, the spot continued to grow and scabs formed over most of his body. Plaintiff's left arm continued to swell and eventually turned black and had to be amputated. A few weeks later, his left shoulder was amputated. Much of plaintiff's face and body was left scarred.

On January 23, 1979, plaintiff filed suit against defendant. Plaintiff alleged that defendant was liable for his injuries because defendant failed to include in its package insert accompanying the smallpox vaccine a warning that children with immune deficiencies or chronic infections should not be immunized with the vaccine. Plaintiff claimed that, had such a warning been provided, the nurses who immunized plaintiff would have been alerted to ask plaintiff's mother whether plaintiff suffered from an immune deficiency or had had many infections. Defendant filed a motion for summary judgment, alleging it was immune from suit under the doctrine of governmental immunity. The court denied the motion, finding that when plaintiff filed suit defendant was not covered by common-law or statutory governmental immunity. The court based its decision on *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976), in which common-law governmental immunity was abrogated.

The case went to trial without a jury. On November 19, 1984, the court issued its findings of fact and conclusions of law. The court found that defendant was negligent in failing to warn of the dangers of immunizing an immune-deficient child and that defendant's negligence was a proximate cause of plaintiff's injuries. On December 26, 1984,

the court entered judgment in favor of plaintiff in the amount of $814,620. This amount was reduced by $224,360, which was the amount of a settlement between plaintiff and Genesee County. The final judgment was thus $590,260.

On appeal, defendant first claims that the court erred in ruling that defendant was not covered by governmental immunity. Defendant argues that *Pittman* should not be applied to cases which were filed after *Pittman* was decided, but in which the cause of action accrued before such date. We disagree.

In *Pittman*, the Supreme Court abrogated the common-law defense of state governmental immunity. The Court further held that "[t]he holding we announce today is prospective, with the exception of the instant case and any cases now pending in which an express challenge to the common-law defense of governmental immunity had been made and preserved." *Pittman, supra,* p 50. The Court cited *Bricker v Green,* 313 Mich 218; 21 NW2d 105 (1946), in which the Court held that its new rule abrogating imputed negligence would be applied to "pending and future cases." *Bricker, supra,* p 236. Neither the *Pittman* Court nor the *Bricker* Court addressed the issue of whether "future cases" included cases commenced after the date of its decision whose causes of action accrued before the date of its decision. We believe that the trial court's conclusion that *Pittman* applies to deprive defendant of the defense of governmental immunity is correct.

In analyzing the issue whether *Pittman* operates to deprive defendant of its defense, it is helpful to examine previous cases in which our Supreme Court has decided the application of new rules of law. In *Murray v Beyer Memorial Hospital,* 409 Mich 217; 293 NW2d 341 (1980), the Court deter-

mined the application of *Parker v Highland Park,*
404 Mich 183; 273 NW2d 413 (1978). The Court in
*Parker v Highland Park* had held that municipally
owned general hospitals did not enjoy governmen-
tal immunity. The *Murray* Court held:

> [T]he rule of *Parker* is to be applied to all cases
> pending on December 27, 1978, in which an ex-
> press challenge to the defense of governmental
> immunity was made and preserved as well as all
> cases *started after that date.* See *Placek v Sterling
> Heights,* 405 Mich 638, 662-668; 275 NW2d 511
> (1979); *Pittman v City of Taylor,* 398 Mich 41, 50;
> 247 NW2d 512 (1976); *Daley v LaCroix,* 384 Mich
> 4, 14; 179 NW2d 390 (1970); *Bricker v Green,* 313
> Mich 218, 236; 21 NW2d 105 (1946). [*Murray,
> supra,* pp 221-222.]

In *Placek, supra,* the Court adopted the doctrine
of comparative negligence and then determined to
what extent the new rule should be applied. The
Court first noted that there are three main catego-
ries of application:

> A new rule can be (1) made applicable to all
> cases in which a cause of action has accrued and
> which are still lawfully pending and all future
> cases, (2) made applicable to the case at bar and
> all future cases or (3) made to exclude the case at
> bar but be made applicable to all cases to be filed
> hereafter or after an arbitrary control date speci-
> fied herein. See *Myers v Genesee County Auditor,*
> 375 Mich 1, 11; 133 NW2d 190 (1965). [*Placek,
> supra,* p 662.]

In *Myers, supra,* the Court stated:

> We now take up the question whether [the]
> decision here is to (1) include the case at bar; (2)
> exclude the case at bar but be made to apply to all
> cases to be decided hereafter or after an arbitrary

control date herein specified; (3) be made applicable to all cases in which a cause of action has accrued, the assertion of which is not barred by other defenses, including but not limited to statutes providing for the limitation of actions.

*   *   *

When we overruled the doctrine of imputed negligence . . . we did so as to "pending and future cases" as well as to that case itself. See *Bricker v Green*, 313 Mich 218 [236; 21 NW2d 105; 163 ALR 697 (1946)]. We adopt the same policy here. [*Meyers, supra*, p 11.]

Thus, the new rule was to be applicable to a case filed after *Myers* was issued in which the cause of action had previously accrued. *Placek* followed *Myers* in holding that the new rule was

applicable to the instant case and all appropriate cases in which trial commences after the date of this opinion including those in which a retrial is to occur because of remand on any other issue. Further, we find comparative negligence applicable to any case presently pending on appeal in which application of the doctrine was requested at the trial court and the issue preserved for appeal. Finally, comparative negligence shall be the applicable rule in any case commenced but not submitted to the trier of fact prior to the date of this decision, but in no case shall it apply unless there is an appropriate request by counsel prior to submission to the trier of fact. [*Placek, supra*, pp 667-668.]

In contrast to *Murray, Placek* and *Myers,* is *Parker v Port Huron Hospital,* 361 Mich 1; 105 NW2d 1 (1960). *Parker v Port Huron Hospital* abolished the immunity from tort liability formerly enjoyed by charitable, nonprofit hospitals and declared that the new rule would "apply to the instant case and to all future *causes of action*

*arising* after September 15, 1960, the date of the filing of this opinion." *Parker v Port Huron Hospital, supra,* p 28. Charitable hospitals therefore retained their immunity from liability for injuries caused by the negligence of their employees before the filing of the opinion. Justice and fairness required this result because some charitable, nonprofit hospital corporations may have relied on the old rule and failed to protect themselves with insurance. It seems probable that had the *Pittman* Court intended its rule to be applied only to future causes of action, it would have cited *Parker v Port Huron Hospital,* rather than *Bricker v Green, supra.*

A finding that the *Pittman* rule operates retroactively to eliminate the state's immunity defense comports with the general rule that appellate court decisions are to be given full retroactive effect unless limited retroactivity is preferred where justified by (1) the purpose of the new rule, (2) the general reliance on the old rule, and (3) the effect that retroactivity will have on the administration of justice. *Tebo v Havlik,* 418 Mich 350, 360-361; 343 NW2d 181 (1984); *King v General Motors Corp,* 136 Mich App 301, 306; 356 NW2d 626 (1984), lv den 422 Mich 871 (1985). The purpose of the new rule, to provide fairness and justice to those injured by wrongful conduct on the part of the state, *Pittman, supra,* p 48, is furthered by retroactivity. With respect to the reliance factor, *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961), which abrogated governmental immunity for municipal corporations, put the state on notice that the continued existence of the doctrine of governmental immunity was uncertain. Retroactivity should not be detrimental to the administration of justice, since the state now enjoys governmental immunity, and most suits in which the

cause of action accrued before August 1, 1970, the effective date of MCL 691.1407; MSA 3.996(107), would be barred by the statute of limitations. And, as plaintiff points out, since statutory governmental immunity precluded successful actions on most claims arising after the *Pittman* decision, "future cases" could only mean cases whose causes of action arose before the filing of the *Pittman* decision but which were not commenced until after it.

Defendant alternatively argues that it is immune under the provisions of the governmental tort liability act, MCL 691.1401 *et seq.*; MSA 3.996 (101) *et seq.*, as amended in 1970. Defendant asserts that the act applies to plaintiff's claim because he did not bring suit until January, 1979. This argument is meritless, as the issue of governmental immunity must be resolved according to the law as it existed at the time that the cause of action accrued. *Pittman, supra,* p 46.

Thus, we feel that the trial court correctly held that defendant was not entitled to governmental immunity.

Next, defendant claims that the trial court erred in finding that defendant was negligent and that defendant's negligence was a proximate cause of plaintiff's injuries. The findings of fact of a trial court sitting without a jury will not be set aside unless they are clearly erroneous. MCR 2.613(C), formerly GCR 1963, 517.1. A finding is clearly erroneous if, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976); *Auto Electric & Service Corp v Rockwell International Corp,* 111 Mich App 292, 296; 314 NW2d 592 (1981), lv den 414 Mich 936 (1982). In the instant case, the trial court made extensive findings of fact. We have

carefully reviewed the record and find that these findings are not clearly erroneous.

Plaintiff has filed in this Court a "Delayed Brief on Cross-Appeal." Plaintiff stated in this brief that he filed a timely claim of cross-appeal from the judgment, appealing from the court's denial of his motion for new trial to amend the findings of facts and conclusions of law pursuant to GCR 1963, 527.1, now MCR 2.611(A)(2)(c), in which he requested the court to increase the damage award to take into account inflation. Plaintiff obtained a stipulation in this Court for an extension of twenty-eight days to file an appellate brief, but that period expired in August, 1986. Plaintiff claims that no appellate brief was filed because of the holding in *Bosak v Hutchinson,* 422 Mich 712; 375 NW2d 333 (1985). In *Bosak,* the Court held that, in light of the lack of testimony on the subject of inflation, the trial court was correct in refusing to instruct the jury to take into account a thirteen percent rate of inflation in calculating the plaintiffs' future damages. *Bosak, supra,* p 747. Since plaintiff in the instant case had provided no testimony on inflation, plaintiff claims that he felt an appellate brief on the issue would have been futile. Plaintiff urges that he should now be allowed to file an appellate brief, in light of *Kovacs v Chesapeake & Ohio R Co,* 426 Mich 647; 397 NW2d 169 (1986). In *Kovacs,* the Court held that the trial court was correct in instructing the jury that it could consider the effect of inflation on the amount of damages it found the plaintiff to have suffered. The Court stated that the plaintiff should not be required to first introduce evidence on inflation, since inflation is a fact known to every juror without expert testimony. *Kovacs, supra,* p 651.

We feel that the posture of *Bosak* and *Kovacs*

did not warrant plaintiff's failure to file a timely appellate brief and does not warrant the allowance of the filing of a delayed appellate brief. A close reading of *Bosak* and *Kovacs* reveals that *Kovacs* did not overrule *Bosak*. Rather, each was decided on its own facts. The fact that the *Bosak* Court found no error in the trial court's refusal to instruct does not mean that the trial court's refusal to take into consideration inflation in the instant case would have been upheld. Indeed, at the time *Bosak* was decided, plaintiff still had the benefit of this Court's decision in *Kovacs*, in which we affirmed an instruction in which the trial court instructed the jury to consider inflation. *Kovacs v Chesapeake & Ohio R Co,* 134 Mich App 514; 351 NW2d 581 (1984). The *Bosak* Court recognized the *Kovacs* decision and distinguished it because the instruction in *Kovacs* was general, while the *Bosak* plaintiffs wished a specific instruction regarding a thirteen percent rate of inflation. *Bosak, supra,* p 747. Plaintiff in the instant case could have cited this Court's *Kovacs* decision in his appellate brief. Although leave to appeal in *Kovacs* had been granted, plaintiff could have preserved the issue for appeal to the Supreme Court by filing an appellate brief in this Court. Thus, we feel that, since plaintiff's reasoning for failure to file a timely appellate brief was not sound, plaintiff should not be allowed to file a tardy appellate brief.

Because we hold that defendant is not covered by governmental immunity, we need not address defendant's claim that the manufacture and distribution of the smallpox vaccine was a governmental function.

Affirmed.