JONES v WILLIAMS

Docket Nos. 91602, 92550. Submitted November 4, 1987, at Detroit. Decided August 3, 1988. Leave to appeal applied for.

Henrietta Jones, next friend of Curtis Jones, brought an action in the Wayne Circuit Court against Rolly Williams, the Detroit Board of Education, North Idaho Junior College and others, alleging that defendants acted in concert to exploit the basketball talent of Curtis Jones, now mentally incompetent, in derogation of duties they had to assist him in furthering his education. The court, Louis F. Simmons, Jr., J., denied a motion for summary disposition for failure to state a claim made by the board of education. The board of education appealed by leave granted. Plaintiff cross-appealed an order granting accelerated judgment in favor of North Idaho Junior College. The court also denied a motion for summary judgment for failure to state a claim made by Rolly Williams, the college's basketball coach. Williams appealed separately by leave granted. The appeals were consolidated by the Court of Appeals. The evidence showed that Curtis Jones played basketball for a junior and senior high school in the Detroit school system and for North Idaho Junior College and that North Idaho's and Williams' contacts with the state consisted of a few phone calls to recruit Jones and the mailing of an application and scholarship form to follow up on the recruitment.

The Court of Appeals *held:*

1. The court correctly granted summary disposition in favor of the Detroit Board of Education. The board was protected at the time of the alleged tort by common-law governmental

REFERENCES

Am Jur 2d, Process §§ 75 *et seq.*

Am Jur 2d, States, Territories, and Dependencies §§ 99 *et seq.*

Immunity of private schools and institutions of higher learning from liability in tort. 38 ALR3d 480.

Construction and application, as to isolated acts or transactions, of state statutes or rules of court predicating in personem jurisdiction over nonresidents or foreign corporations upon the doing of an act, or upon doing or transacting business or "any" business, within the state. 27 ALR3d 397.

immunity which applied to the conduct of a junior and senior high sports program.

2. The court properly granted accelerated judgment in favor of North Idaho Junior College and its president on the ground that the court lacked personal jurisdiction.

3. The court erred in denying accelerated judgment in favor of Rolly Williams because of lack of personal jurisdiction. The long-arm statute did not provide a basis for imposing limited personal jurisdiction under the circumstances.

Affirmed in part and reversed in part.

1. GOVERNMENTAL IMMUNITY — PLEADING — TORTS.

A party bringing a tort action against a state agency must plead facts in avoidance of governmental immunity.

2. ACTIONS — CONTROLLING LAW — SUBSTANTIVE RIGHTS.

The substantive rights and liabilities of parties to an action are determinable according to the law as it stood when the causes alleged by the plaintiff accrued.

3. GOVERNMENTAL IMMUNITY — COMMON-LAW GOVERNMENTAL IMMUNITY.

A state agency is immune from tort liability whenever it is engaged in the exercise or discharge of a governmental function, i.e., any activity which is expressly or impliedly mandated or authorized by constitution, statute or other law.

4. GOVERNMENTAL IMMUNITY — COMMON-LAW GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS.

Common-law governmental immunity applies to intentional torts committed within the scope of a governmental function.

5. COURTS — JURISDICTION — LONG-ARM STATUTE — DUE PROCESS — MINIMUM CONTACTS.

For a state to have long-arm jurisdiction over a defendant, it is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws (US Const, Am XIV; MCL 600.705; MSA 27A.705).

6. COURTS — JURISDICTION — LONG-ARM STATUTE — PURPOSEFUL AVAILMENT.

A "purposeful availment" by a nonresident of the privilege of conducting activities in Michigan sufficient to justify the state in exercising long-arm jurisdiction over him is something akin either to a deliberate undertaking to do or cause an act or

thing to be done in Michigan or conduct which can properly be regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities (MCL 600.705; MSA 27A.705).

7. COURTS — JURISDICTION — LIMITED JURISDICTION — LONG-ARM STATUTE — TORTS.

   The statute regarding limited jurisdiction over an individual that speaks of causing consequences to occur within the state applies to situations in which an act or conduct of the defendant outside of Michigan leads to an event in Michigan which gives rise to a tort claim; in the context of personal injury cases that event occurs when the injury results (MCL 600.705[2]; MSA 27A.705[2]).

*Quinn, Borella & Stockton, P.C.* (by *Jerome G. Quinn*), and *Gromek, Bendure & Thomas* (by *David J. Wright* and *Neal C. Villhauer*), of Counsel, for plaintiff.

*Reynolds, Beeby, Magnuson & Kenny, P.C.* (by *Renee Vintzel Loridas*), for Rolly Williams and North Idaho Junior College.

*Edward F. Bell & Associates, P.C.* (by *Cynthia K. Yott*), for Detroit Board of Education.

Before: GILLIS, P.J., and HOLBROOK, JR., and S. N. ANDREWS,* JJ.

PER CURIAM. Plaintiff commenced this action on August 14, 1981, alleging that defendants herein, with others not relevant to this appeal, acted in concert to exploit the basketball talents of Curtis Jones, now mentally incompetent, in derogation of duties they had to assist him in furthering his education.

Defendant City of Detroit Board of Education appeals by leave granted from the trial court's order of April 4, 1986, denying its motion for

* Circuit judge, sitting on the Court of Appeals by assignment.

summary disposition for failure to state a claim upon which relief could be granted and governmental immunity. We reverse.

Plaintiff cross-appeals as of right from the trial court's order of December 3, 1982, granting accelerated judgment as to defendant North Idaho Junior College (NIJC) also known as North Idaho College. We affirm.

Defendant Rolly Williams appeals by leave granted from an order of March 21, 1986, denying his motion for summary disposition for failure to state a claim upon which relief could be granted and governmental immunity. We reverse, finding no jurisdiction by this state.

Plaintiff alleges that, by the fourth grade, defendant school board discovered Curtis Jones was intellectually deficient and would require special education in a school for slow learners. So placed, he graduated to a similar junior high school where he developed a talent for basketball. Plaintiff claims that, once this talent became known, he was transferred into regular Detroit junior high and high school programs solely to exploit that talent. Graduated from Northwestern High School in 1968, Jones attended NIJC where, he claims, he was to play basketball while being "academically carried" for two years, whereupon he was to attend the University of Michigan on the same terms until he played out his eligibility. Plaintiff claims that defendants knew of Curtis Jones' intellectual limitations and his inability to perform academically in college and that he could neither read nor write. Plaintiff claims that during his second year at NIJC Jones was subjected to such ridicule by students who had discovered his illiteracy that he suffered a complete nervous breakdown from which he has not recovered.

Defendant school board moved for summary

disposition on the grounds that plaintiff failed to state a claim upon which relief could be granted and that, in any event, plaintiff's claims were barred by governmental immunity. The trial court denied the motion except as to plaintiff's 42 USC 1983 claim. We reverse that part of defendant's motion which was denied. When bringing suit against a state agency, plaintiff must plead in avoidance of governmental immunity. *Hoffman v Genesee Co,* 157 Mich App 1; 403 NW2d 485 (1987), lv den 428 Mich 902 (1987). Boards of education have traditionally been classified as state agencies for tort liability purposes. Here, plaintiff did plead in avoidance of governmental immunity.

The substantive rights and liabilities of parties are determinable according to the law as it stood when the causes alleged by the plaintiff accrued. *Husted v Consumers Power Co,* 376 Mich 41; 135 NW2d 370 (1965). Plaintiff's cause of action arose in January, 1970, when the last element necessary to the cause of action occurred. Sovereign immunity was first codified by the Legislature in 1964, MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq.* Section 7 of 1964 PA 107 was declared unconstitutional in *Maki v City of East Tawas,* 18 Mich App 109; 170 NW2d 530 (1969), aff'd 385 Mich 151; 188 NW2d 593 (1971). Thus, statutory immunity, MCL 691.1407; MSA 3.996(107), does not apply to shield defendant school board from tort liability. *Campbell v Detroit,* 51 Mich App 34; 214 NW2d 337 (1973). The constitutional defect was corrected by 1970 PA 155, effective August 1, 1970. However, causes of action arising before this date were governed by this Court's common-law decisions. *Pittman v City of Taylor,* 398 Mich 41, 46; 247 NW2d 512 (1976). Although *Pittman* abrogated the common-law doctrine of governmental immunity,

the ruling was prospective "with the exception of the instant case and any cases now pending in which an express challenge to the common-law defense of governmental immunity has been made and preserved." *Id.* at 45. The Court in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), addressed that language in *Pittman* and stated that *"Pittman,* however, has limited applicability. Only those cases pending or filed as of November 23, 1976, involving causes of action arising before August 1, 1970 (the date § 7 became effective), could take advantage of the demise of common-law sovereign immunity." *Ross,* 607, n 23. Compare *Rozier v Dep't of Public Health,* 161 Mich App 591; 411 NW2d 786 (1987), lv pending (abrogation of common-law immunity announced in *Pittman* would be applicable to all cases started after November 23, 1976, regardless of when the cause of action arose). The *Rozier* panel, however, failed to address the language of *Ross.* We are bound to follow *Ross,* and, therefore, hold that defendant school board is entitled to claim that common-law governmental immunity applies.

We must now decide which definition of common-law immunity applies. When plaintiff's claim accrued in January, 1970, "the state enjoyed immunity from tort liability . . . whenever it was engaged in the exercise or discharge of a governmental function." *Ross,* 608. "Governmental function" has been defined in a variety of ways. Plaintiff, in raising the issue of governmental immunity in her pleadings, pled in avoidance of it under the definition found in *Ross.* Plaintiff properly preserved the issue through appeal, at all times arguing under *Ross.* Under *Hyde v University of Michigan Bd of Regents,* 426 Mich 223; 393 NW2d 847 (1986), "the rules articulated in *Ross* apply to all

cases . . . pending either in trial or appellate courts on January 22, 1985, in which a governmental immunity issue was properly raised and preserved." *Id.* at 230. In addition, *Ross* states: "These nine cases require us to reexamine the extent of immunity from tort liability which the governmental tort act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq., and the common law* provide to the state and its agencies." *Ross,* 591 (emphasis supplied). Thus, we apply the *Ross* definition of "governmental function." Under *Ross,* a governmental function is any "activity which is expressly or impliedly mandated or authorized by constitution, statute or other law." 420 Mich 620. Defendant school board would be immune from suit because it was performing a function authorized by constitution and statute. See, Const 1963, art 8, §§ 1, 2, MCL 380.1 *et seq.*; MSA 15.4001 *et seq.*, MCL 380.1289; MSA 15.41289. Even under the "common good of all" test of governmental function at common law, it is clear that high school sports as part of the secondary education process is a governmental function. *Richards v Birmingham School Dist,* 348 Mich 490, 509-510; 83 NW2d 643 (1957), overruled on other grounds, *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961).

Immunity applies not only to negligence, but also to intentional torts if they are committed within the scope of a governmental function. *Smith v Dep't of Public Health,* 428 Mich 540; 410 NW2d 749 (1987). This Court should focus on the general activity involved rather than the specific conduct. *Id.* at 607-610. In this case, the general activity was the maintenance of an interscholastic basketball program as a part of the general secondary education process. "Intent" is used to distinguish governmental function from nongovernmental functions, not to distinguish the nature of

the tort. *Id.* at 611. Again, under common law, intentional torts were not an exception to governmental immunity. Moreover, a governmental agency will not be vicariously liable for a tort committed by its officer, employee, or agent, acting during the course of employment and within the scope of authority while engaged in an activity which constituted the exercise or discharge of a governmental function. *Ross,* 625. Those individuals employed by defendant school board must be deemed to have been cloaked with the apparent authority to act as they did and they were acting within the scope of their employment. In addition, defendant school board's employees and agents were engaged in an activity which is a governmental function. Therefore, defendant school board is not vicariously liable for any tort which may have been committed by it or its employees or agents against Curtis Jones.

Next, plaintiff cross-appeals from an order granting accelerated judgment to defendants North Idaho Junior College and its President, Barry G. Schuler, on the grounds that the Michigan courts had no jurisdiction over them. We affirm. At the same time, defendant Rolly Williams' motion for accelerated judgment on the same grounds was denied. Defendant Williams did not appeal this order but, rather, a later one denying summary disposition based on Michigan choice-of-law rules and governmental immunity. However, in his supplemental brief, defendant Williams "contends that he is improperly before a Michigan state court . . . ." Thus, we find the issue of jurisdiction as to Williams properly preserved and we may consider it lest manifest injustice result. *Butler v DAIIE,* 121 Mich App 727, 742; 329 NW2d 781 (1982). We reverse the finding of the trial court that Michigan courts have juris-

diction over defendant Williams. When reviewing a motion for accelerated judgment, this Court must accept all well-pled facts as true. *Hansen v Upper Peninsula Power Co,* 144 Mich App 138, 140; 373 NW2d 270 (1985). Questions of jurisdiction are reviewed by this Court directly. *Kircos v Lola Cars Ltd,* 97 Mich App 379, 384; 296 NW2d 32 (1980). The first part of our review concerns whether NIJC is subject to Michigan general personal jurisdiction over corporations, MCL 600.711; MSA 27A.711, which provides as follows:

> The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
> (1) Incorporation under the laws of this state.
> (2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.
> (3) The carrying on of a continuous and systematic part of its *general business* within the state. [Emphasis added.]

It is undisputed that NIJC is not incorporated under the laws of Michigan. It is further undisputed that NIJC has not consented to jurisdiction; neither is it subject to § 745.[1] Nor does defendant NIJC fall within the third possibility, since the general business of the college is education and defendant NIJC did not continuously and systematically educate students within this state.

If the statute were to be read in a very broad sense so as to encompass basketball and the re-

---

[1] MCL 600.745; MSA 27A.745 pertains to an agreement in writing that an action may be brought in Michigan.

cruiting of basketball players within NIJC's "business," plaintiff has failed to show a continuous and systematic carrying on of the business as contemplated by case law. See, *Keeton v Hustler Magazine, Inc,* 465 US 770; 104 S Ct 1473; 79 L Ed 2d 790 (1984) (sale of ten thousand to fifteen thousand magazine copies within eight months), *Lincoln v Fairfield-Nobel Co,* 76 Mich App 514; 257 NW2d 148 (1977) (numerous mail order sales of clothing to several shops in Michigan over a period of years, actively solicited by defendant's salesmen). Compare *Selman v Harvard Medical School,* 494 F Supp 603 (SD NY, 1980) (mailing of medical school applications to and administration of MCAT in New York, not sufficient systematic and regular business).

The second part of our review is whether defendant NIJC, through itself or its agent, is subject to Michigan limited personal jurisdiction (long-arm jurisdiction) pursuant to MCL 600.715; MSA 27A.715, which provides:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of the jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property,

or risk located within the state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Relevant to this appeal are subsections (1), (2) and (5). The exercise of limited personal jurisdiction is restrained by the due process clause of the Fourteenth Amendment. *International Shoe Co v Washington,* 326 US 310, 316; 66 S Ct 154; 90 L Ed 95 (1945), was the watershed case setting forth the due process parameters for exercising long-arm jurisdiction. There the United States Supreme Court first set forth the test requiring "minimum contacts" with the forum state to make it reasonable and just according to our traditional conception of fair play and substantial justice before exercising long-arm jurisdiction. *Id.* at 316. The United States Supreme Court qualified this standard, however, in *Hanson v Denckla,* 357 US 235; 78 S Ct 1228; 2 L Ed 2d 1283 (1958), stating that the determination of the question of personal jurisdiction over a nonresident defendant will vary with the quality and nature of the defendant's activity, stressing that "it is essential *in each case* that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253 (emphasis added).

Our Supreme Court emphasized with approval the above-stated principle in *Khalaf v Bankers & Shippers Ins Co,* 404 Mich 134; 273 NW2d 811 (1978). While the Court discussed the parameters of jurisdiction as including a single act having "substantial connection" with the state, as well as causes of action arising from the defendant's activ-

ities in the forum where the nonresident has an adequate relationship with the state, our Supreme Court also stressed as follows:

> It is *"essential in each case* that there be some act by which *the defendant purposefully avails* itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws" . . . . The defendant's activities will ordinarily be such that he will have "reason to expect to be haled before" the forum court. [*Id.* at 148.]

The Court then clearly elaborated three primary factors based upon Supreme Court guidelines as follows: "the *quantity* of the contacts, the *nature and quality* of the contacts, and the *source and connection* of the cause of action with those contacts." *Id.* at 149. (Emphasis in original.) What the defendant must purposefully avail himself of are the benefits and protections of the laws of the forum state. *Khalaf, supra,* p 148. "Purposeful availment" as it relates to the jurisdictional requirements has been construed by numerous Michigan courts.

> A "purposeful availment" is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being "haled before" a Michigan court. [*Khalaf, supra,* pp 153-154.]

We fail to see how one or two telephone calls, directed to Michigan solely for the purpose of inquiring as to the potential availability of basketball talent, and the following up of those calls with

an application and scholarship form, both of which were solely within Curtis Jones' prerogative to complete, constitutes more than a "passive availment" of Michigan opportunities such that there was reason for these defendants to foresee being hailed into a Michigan court to defend an action.

Moreover, in *Clavenna v Holsey,* 81 Mich App 472; 265 NW2d 378 (1978), lv den 404 Mich 804 (1978), this Court stated that the predecessor of MCL 600.715(1); MSA 27A.715(1) did not apply to tort claims. Because subsection (1) is inapplicable in this case, we look specifically to subsections (2) and (5). *Id.*

This Court adopted the analysis of three federal court decisions analyzing the reach of Michigan's long-arm jurisdiction based on in-state "consequences" resulting from a tortious incident occurring outside of a state: *Price v Shessel,* 415 F Supp 306 (ED Mich, 1976); *Storie v Beech Aircraft Corp,* 417 F Supp 141 (ED Mich, 1976); *Amburn v Harold Forster Industries, Ltd,* 423 F Supp 1302 (ED Mich, 1976). The *Clavenna* panel construed this section of the Michigan statute on the basis of its interpretation of the scope of a state's exercise of long-arm jurisdiction over a nonresident as limited by the due process clause of the Fourteenth Amendment, requiring a defendant to have certain minimum contacts with the forum state, and accordingly declined jurisdiction. 81 Mich App 475. The *Clavenna* Court specifically followed *Storie v Beech Aircraft Corp, supra,* quoting *Storie* as follows:

> The Court concludes that when the Michigan statute speaks of causing consequences to occur within the state, it applies to situations in which an act or conduct of the defendant outside of Michigan leads to an event in Michigan which

gives rise to a tort claim. *In the context of personal injury cases, that event occurs when the injury results, and in this case that consequence occurred in Ohio at the time of the airplane crash.* [81 Mich App 477, quoting *Storie, supra,* p 145. Emphasis added.]

Applying this analysis to the instant case, it is clear that Curtis Jones' injuries arose in Idaho at the time he allegedly suffered his "breakdown." Thus, there were no consequences in the state of Michigan resulting in an action for tort.

Our Supreme Court, in *Witbeck v Bill Cody's Ranch Inn,* 428 Mich 659; 411 NW2d 439 (1987), reexamined Michigan's long-arm statute and concluded that application of it to the cases therein would violate due process. The *Witbeck* case was similar to the instant case in that the "contacts" consisted only of interstate phone calls and a mailing. Although in *Witbeck* the plaintiff originated the telephone call to the out-of-state corporation, defendant's phone call, in this case, which consisted only of a broad inquiry as to potential talent, cannot be said to be sufficient to demonstrate purposeful availment. Moreover, even if that threshold is satisfied, jurisdiction based on those contacts, weighed in light of other factors, must "comport with notions of fair play and substantial justice." *Witbeck,* 669, citing *Int'l Shoe Co, supra,* p 316. Notions of fair play and substantial justice surely are not met if Idaho defendants NIJC, Schuler and Williams are forced to defend a suit in Michigan for a tort which occurred in Idaho. In addition, the trial court's granting of defendant NIJC's motion was with prejudice only as to Michigan, but without prejudice as to any other state. Plaintiff is free to proceed with her suit in Idaho or any other state where jurisdiction is proper.

We find no evidence of a contract between the parties such that the Idaho defendants fall within MCL 600.715(5); 27A.715(5).

Having found no jurisdiction by the Michigan courts over defendants NIJC, Barry G. Schuler and Rolly Williams, we decline to address any remaining substantive issues pertaining to those defendants.

Affirmed in part and reversed in part.