# STATE OF MICHIGAN

# COURT OF APPEALS

GENESEE COUNTY DRAIN COMMISSIONER, JEFFREY WRIGHT, CHARTER TOWNSHIP OF FENTON, DENNIS BOW, KARYN MILLER, BONNIE MATHIS, PAULA ZELENKO, MARILYN LAFURGEY, RAY FOUST, DAVID GUIGEAR, ROBERT M. PALMER, RICK CARUSO, WILLIAM W. KOVI, MAXINE ORR, VILLAGE OF GOODRICH, VILLAGE OF GAINES, VILLAGE OF LENNON, CHARTER TOWNSHIP OF MUNDY, TOWNSHIP OF ARGENTINE, CHARTER TOWNSHIP OF FLINT, CHARTER TOWNSHIP OF MT. MORRIS, TOWNSHIP OF GAINES, AND CITY OF FLUSHING.

FOR PUBLICATION
March 3, 2015
9:00 a.m.

Plaintiffs-Appellees/Cross-Appellants,

v

No. 312450
Genesee County Circuit
LC No. 11-97012-CK

GENESEE COUNTY, a Michigan Municipal Corporation, and GENESEE COUNTY BOARD OF COMMISSIONERS,

Defendants-Appellants/Cross-Appellees.

Before: STEPHENS, P.J., and SAAD and BOONSTRA, JJ.

SAAD, J.

Plaintiffs and defendants appeal the trial court's partial grant and partial denial of defendants' motion for summary disposition under MCR 2.116(C)(7) and (C)(8). For the reasons stated below, we affirm in part and reverse in part, and remand for proceedings consistent with this opinion.

## I. NATURE OF THE CASE

-1-

Governmental immunity cases under the Governmental Tort Liability Act ("GTLA")[1] usually involve personal injury or property damage tort claims made by individuals against governmental agencies or employees. This case, however, is unusual, because it involves tort claims made by a group of governmental agencies against another group of governmental agencies. And it is even more unusual because plaintiffs' tort claims arise out of a contractual agreement. Despite the peculiar aspects of this action, our research and understanding of Michigan case law leads us to a conventional ruling: plaintiffs' intentional tort claims are barred by the GTLA, because the GTLA contains no exceptions for intentional torts, and because defendants were engaged in a basic governmental function as they committed the alleged tortious conduct.

Specifically, plaintiffs maintain that defendants breached their contractual obligations in their administration of a group health insurance contract for employees of both plaintiffs and defendants.[2] In so doing, plaintiffs argue, defendants also committed the intentional torts of conversion and fraud by wrongfully keeping premium refunds for themselves, instead of sharing the refunds with plaintiffs, as allegedly required by the contract. Though plaintiffs acknowledge that there are no statutory exceptions for intentional torts under the GTLA, they note that the GTLA's immunity from tort liability only applies to governmental agencies engaged in the discharge of a governmental function. Defendants, plaintiffs claim, could not have been engaged in a governmental function when they committed intentional torts, because tortious conduct cannot be a "governmental function." From this, plaintiffs say defendants are not immune from tort liability for their intentional wrongdoing under the GTLA.

While plaintiffs' assertion has surface appeal, it must be rejected. Were we to accept such a theory, we would in essence rewrite the GTLA and make public policy choices that are rightly the Legislature's to make. We would create a new (and wholly unsupported) exception to the GTLA's general rule of governmental immunity from tort liability—an exception that would swallow up this general rule. To avoid dismissal of their case pursuant to the GTLA, future plaintiffs would only need to allege intentional wrongdoing by a governmental agency. Such a result contravenes the stated purpose of the GTLA, which is to *limit* governmental tort liability to specific, statutorily enumerated situations. Accordingly, we hold that plaintiffs' tort claims are barred by the GTLA, and explain our reasoning in greater detail below.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Genesee County Drain Commissioner ("Drain Commissioner") alleges that it had an agreement with defendant Genesee County to purchase group health insurance from Blue Cross/Blue Shield of Michigan ("Blue Cross") for their respective employees. Blue Cross

---

[1] MCL 691.1401, *et seq.*

[2] Plaintiffs have also appealed a procedural issue: whether equitable estoppel may be applied to negate the statute of limitations and allow plaintiffs to seek contract damages for injuries accrued prior to October 24, 2005. The substantive merits of plaintiffs' breach of contract claim are not before us, and we make no findings on those matters.

determined the monthly and/or annual premium rate paid by each entity, and they were separately invoiced for the payments. According to plaintiffs, Genesee County was to administer the group plan for the parties under the agreement.

In 2007, the Drain Commissioner began making contingency plans for alternative health-insurance coverage in the event Genesee County decided to end the agreement for group health-insurance coverage. After obtaining financial records and information from Blue Cross, the Drain Commissioner says that it learned that Genesee County, in its capacity as the group-plan administrator, had received substantial refunds from Blue Cross (supposedly totaling in the millions of dollars) for premium overpayments made by each member of the group plan. The county—which, plaintiffs say, could or should have used the refunds to reduce premium costs for their own employees and employees from the Drain Commission, or could or should have returned a portion of the money to each member of the group plan—instead deposited the money in its general fund. These allocations, per MCL 15.263(1), took place at public meetings and were (and remain) matters of public record. Yet the Drain Commissioner claims it was unaware of Genesee County's conduct, and ultimately demanded that the county pay it a portion of the refunded money the county received from Blue Cross. When defendant Genesee County Board of Commissioners ("Board of Commissioners") did not authorize the county to do so, the Drain Commissioner and other affected parties brought this action against defendants in Genesee Circuit Court on October 24, 2011.

Among other things, plaintiffs asserted that defendants: (1) breached the alleged agreement to purchase health-insurance by placing the refunded premiums in its general fund; and, in so doing, (2) committed a number of intentional torts, including fraud and conversion. Defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(8), and asserted that: (1) any damages plaintiffs sought for breach of contract that accrued from pre–October 24, 2005 conduct were barred by the statute of limitations; and (2) defendants were immune from plaintiffs' intentional tort claims under the GTLA.

At an August 2012 hearing, the trial court held that: (1) plaintiffs' breach of contract claim could only seek damages for actions that accrued after October 24, 2005, pursuant to the six-year statute of limitations specified in MCL 600.5807(8); and (2) defendants' status as governmental entities did not give them immunity from intentional tort claims.

On appeal, plaintiffs say that the trial court should have applied equitable estoppel to the statute of limitations under MCL 600.5807(8), which would have allowed them to seek damages for breach of contract that accrued before October 24, 2005. Defendants argue that the trial court erred when it allowed plaintiffs' intentional tort claims to proceed.

## III. STANDARD OF REVIEW

MCR 2.116(C)(7) provides that a party may file a motion to dismiss a case when "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of . . . immunity granted by law [or] statute of limitations. . ." When it reviews a motion under MCR 2.116(C)(7), the court must "consider all documentary evidence and accept the complaint as factually accurate unless affidavits or other appropriate documents specifically contradict it." *Kuznar v Raksha Corp*, 481 Mich 169, 175–176; 750 NW2d 121 (2008). All well-pled allegations are accepted as

true and construed in favor of the non-moving party. *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012). In the context of a suit where the defendant alleges governmental immunity, "to survive a motion for summary disposition, the plaintiff must . . . allege facts justifying an exception to governmental immunity." *Wade v Dept of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992).

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable" to the non-moving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). Motions under MCR 2.116(C)(8) are granted only where the claims are so unenforceable "as a matter of law that no factual development could possibly justify recovery." *Id*.

Statutory interpretation is a matter of law that is reviewed de novo. *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 707; 664 NW2d 193 (2003). "When ascertaining the Legislature's intent, a reviewing court should focus first on the plain language of the statute in question, and when the language of the statute is unambiguous, it must be enforced as written." *Fellows v Mich Comm for the Blind*, 305 Mich App 289, 297; 854 NW2d 482 (2014). "A court does not construe the meaning of statutory terms in a vacuum. Rather, we interpret the words in their context and with a view to their place in the overall statutory scheme." *Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008) (internal citations and quotation marks omitted).

## IV. ANALYSIS

### A. GOVERNMENTAL IMMUNITY

#### 1. THE GTLA[3]

Though the origins of governmental immunity lie in the antiquated notion that the "sovereign can do no wrong,"[4] the modern rationale is rooted in the more realistic assessment

---

[3] To repeat, this appeal involves only plaintiffs' intentional tort claims, which is why the GTLA, which governs governmental liability for torts, is implicated. Our analysis does not address plaintiffs' claim for breach of contract, which is a separate claim not governed by the GTLA, insofar as it involves contractual liability and not tort liability. See *In re Bradley Estate*, 494 Mich 367, 384–387; 835 NW2d 545 (2013) for a thorough discussion of the distinction between tort liability of governmental agencies (governed by the GTLA) and other forms of liability of governmental agencies (governed by other law). Among other things, the Court held "that 'tort liability' as used in MCL 691.1407(1) means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages." *Id*. at 385.

[4] See *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 596–598; 363 NW2d 641 (1984) (noting Michigan inherited its sovereign authority from the British monarch, and "the first rationale [for sovereign immunity] developed from the perception that the sovereign (the king) was somehow 'divine' or above the law. As such, the king could commit no wrong, and was, therefore, never properly sued"). Michigan cases also note that the state, as sovereign, created

that the sovereign—meaning government at all levels[5]—often does wrong. But the taxpaying citizen, who already pays dearly for government employees to perform governmental functions, would pay an unacceptably high price if every wrong or alleged wrong committed by the government or its agents were regarded as compensable.[6] With this reality in mind, the Michigan Legislature adopted a public policy, codified in the GTLA, that provides governmental entities with strong and comprehensive immunity from tort liability, subject only to extremely limited and strictly construed exceptions.[7] Thus, the law of governmental immunity from tort liability is statutory, a clear public policy choice made by the peoples' representatives, and one that abrogates all common law exceptions to governmental immunity from tort suit.[8]

The Legislature enacted the GTLA in 1964 after a series of court decisions began to erode the general common law rule of governmental immunity from tort liability.[9] The GTLA restores governmental immunity in two ways. First, it abolishes common law exceptions to governmental immunity from tort law.[10] Second, the GTLA mandates that: "[e]xcept as otherwise provided in this act, a governmental agency[11] is immune from tort liability if the

---

the Michigan court system, and is accordingly not subject to the court system's jurisdiction without its consent. *Pohutski v Allen Park*, 465 Mich 675, 682; 641 NW2d 219 (2002).

[5] Over time, our judiciary has applied an extension of sovereign immunity—"governmental immunity"—to apply to "the 'inferior' divisions of government, *i.e.*, townships, school districts, villages, cities, and counties." *Pohutski*, 465 Mich at 682. For ease of reference, we refer to the two concepts as one in the same throughout the opinion, under the term "sovereign immunity."

[6] "The purpose of sovereign immunity is to protect the State from interference with the performance of governmental functions and to preserve and to protect State funds." *Ass'n of Mid-Continent Univ v Bd of Trustees of Northeastern Ill Univ*, 308 Ill App 3d 950, 953; 242 Ill Dec 526; 721 NE2d 805 (Ill App, 1999) (interpreting Illinois' statutes and jurisprudence on governmental immunity). See also *City of Va Beach v Carmichael Dev Co*, 259 Va 493, 499; 527 SE2d 778 (Va, 2000) (internal quotation marks omitted) (holding, under common law, that "[s]overeign immunity is a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities"); and *Trujillo v Utah Dep't of Transp*, 986 P2d 752, 758 (Utah App, 1999) (describing Utah precedent on state governmental immunity act as serving "two policies," including "shield[ing] those governmental acts and decisions impacting on large numbers of people in a myriad of unforeseen ways from individual and class legal actions, the continual threat of which would make public administration all but impossible"). "Cases from foreign jurisdictions are not binding, but can be persuasive." *Holton v Ward*, 303 Mich App 718, 727 n 11; 847 NW2d 1 (2014).

[7] *Pohutski*, 465 Mich at 681.

[8] *Martin by Martin v State*, 129 Mich App 100, 105; 341 NW2d 239 (1983).

[9] See *Ross*, 420 Mich at 605–606; and *Pohutski*, 465 Mich at 683.

[10] *Martin by Martin*, 129 Mich App at 105.

governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1) (footnote added).

The GTLA defines "governmental function" as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b). "[T]his definition is to be broadly applied and requires only that there be *some* constitutional, statutory or other legal basis for the activity in which the governmental agency was engaged." *Harris v Univ of Mich Bd of Regents*, 219 Mich App 679, 684; 558 NW2d 225 (1996) (emphasis in original; internal quotation marks and citations omitted). Furthermore, when determining if an act is a "governmental function," "we look to the general activity involved rather than the specific conduct engaged in when the alleged injury occurred." *Ward v Mich State Univ (On Remand)*, 287 Mich App 76, 84; 782 NW2d 514 (2010).

To overcome governmental immunity for tort liability, then, plaintiffs—whether private parties, or, as here, public entities—who bring tort claims against a governmental defendant[12] must either (1) plead a tort that falls within one of the GTLA's stated exceptions,[13] or (2) demonstrate that the alleged tort occurred outside of the exercise or discharge of a government function.[14]

The GTLA does not contain an "intentional tort exception to governmental immunity" from tort liability. *Harrison v Director of Dept of Corrections*, 194 Mich App 446, 450; 487 NW2d 799 (1992). Accordingly, any plaintiff who seeks to assert an intentional tort claim against a governmental defendant must demonstrate that the defendant committed the alleged tort outside of the exercise or discharge of a governmental function. This is a very high—and extremely difficult—burden for a plaintiff to surmount because, as noted, when courts assess whether a governmental defendant was engaged in the exercise or discharge of a governmental function, "we look to the *general activity* involved rather than the *specific conduct* engaged in when the alleged injury occurred." *Ward*, 287 Mich App at 84 (emphasis added). Thus, "an act may be the exercise or discharge of a governmental function even though it results in an intentional tort." *Smith v Dept of Public Health*, 428 Mich 540, 593; 410 NW2d 749 (1987)

---

[11] As used in the GTLA, the term "governmental agency" means "this state or a political subdivision." MCL 691.1401(a). In turn, "political subdivision" includes "count[ies]," a "district or authority authorized by law or formed by 1 or more political subdivisions," and "a[] . . . board . . . of a political subdivision." MCL 691.1401(e). Here, defendants, which are, respectively, a county and a board of a county, are "political subdivisions" per MCL 691.1401(e), and thus "governmental agencies" under MCL 691.1401(a).

[12] The GTLA also grants immunity from tort liability to certain individuals acting in their capacity as employees of the government. See MCL 691.1407(2) and 691.1407(5).

[13] Among the GTLA's stated exceptions to governmental immunity for tort liability are tort suits that involve government-owned: (1) highways (MCL 691.1402); (2) vehicles (MCL 691.1405); (3) buildings (MCL 691.1406); and (4) sewers (MCL 691.1416).

[14] Stated another way, tort liability may be imposed on a government agency "only if the agency was engaged in ultra vires activity." *Herman v Detroit*, 261 Mich App 141, 144; 680 NW2d 71 (2004).

(opinion of BRICKLEY, J) (internal punctuation marks omitted).[15] In other words, if a governmental agency commits an intentional tort during the exercise or discharge of a governmental function, the governmental agency is immune from tort liability.[16] This limitation of tort liability allows the government to function without fear of time-consuming and costly litigation—a cost which, eventually, would be borne by the taxpaying citizens that fund the government.[17]

## 2. APPLICATION

Here, it is uncontested that defendants are "governmental agencies" within the scope of the GTLA. And plaintiffs' assertion that the administration of an inter-agency agreement to provide health insurance to public employees is not a "governmental function" is simply incorrect.[18] The central issue in this case is whether plaintiffs may assert intentional tort claims

---

[15] In other words, "[governmental] [i]mmunity applies not only to negligence, but also to intentional torts if they are committed within the scope of a governmental function." *Jones v Williams*, 172 Mich App 167, 173; 431 NW2d 419 (1988).

[16] Lest this immunity from intentional tort liability seem unduly restrictive, it should be noted that the GTLA only provides governmental defendants immunity from *tort* liability—not contractual or criminal liability. See *In re Bradley Estate*, 494 Mich at 397. The presence of these other remedies allows parties that have been wronged by a governmental agency to seek redress. There are also non-legal remedies: governmental agencies are staffed by actual people, who commit acts on behalf of the government on a daily basis. If these individuals engage in wrongful conduct that is brought to the public's attention, these individuals, if elected, may have to face the voters, or, if unelected, appropriate workplace sanctions.

[17] This represents an acknowledgment of the reality that state and local governments are not magical entities that have unlimited amounts of money at their disposal—their money comes from taxes levied on people and businesses, and any cost to the public fisc will ultimately be borne by the private citizen. As Milton Friedman memorably put it, "there's no such thing as a free lunch." Milton Friedman, *There's No Such Thing as a Free Lunch*, (Chicago: Open Court, 1975).

[18] County boards of commissioners have long held statutory authority to provide health insurance to county employees under MCL 46.12a, and MCL 280.33(3) states that a county, as here, may bear the cost of "fringe benefits," i.e., health insurance, for drainage-district employees. Furthermore, the provision of health-insurance to government employees is a longstanding governmental function of governmental agencies. See, for example, *Houhgton Lake Ed Ass'n v Houghton Lake Community Sch, Bd of Ed*, 109 Mich App 1, 3–5; 310 NW2d 888 (1981) (addressing PERA-related dispute over health-insurance plan purchased by school district for employees); and *Detroit v Mich Council 25, AFSCME*, 118 Mich App 211, 216; 324 NW2d 578 (1982) (involving city-provided health insurance to city employees).

There is also a specific provision, MCL 124.75(1)(c), that explicitly permits the exact sort of group-insurance arrangement at issue. MCL 124.75 was enacted in 2007, presumably after the parties made their group-insurance agreement. (The parties do not specify when they entered

-7-

against a governmental agency defendant that committed the alleged torts while engaged in the exercise of a governmental function.

Plaintiffs' reasoning is seductively simple, but ultimately circular and self-defeating. Plaintiffs assert that if a governmental agency commits an intentional tort, it cannot, by definition, be engaged in the exercise or discharge of a governmental function, as intentional torts ought not to be regarded as a governmental function. Because the governmental agency committed the alleged tort *outside* of the exercise or discharge of a governmental function, the GTLA's immunity no longer applies, and the victim of the tort may assert intentional tort claims against the governmental agency. Here, plaintiffs say that: (1) defendants committed intentional torts when they deposited refunded health-insurance premiums in the Genesee County general fund; (2) these intentional torts are not a governmental function; and (3) the GTLA is thus abrogated and plaintiffs may assert these intentional tort claims against defendants.

Plaintiffs' analysis both ignores Michigan case law and misreads the GTLA. To repeat: the provision and administration of health insurance benefits to public employees via an inter-agency agreement is plainly a governmental function.[19] The alleged intentional torts committed by defendants were specific acts or decisions that occurred as part of the "general activity" of this governmental function.[20] Defendants are therefore immune from tort liability for any intentional torts they committed in the provision and administration of health insurance benefits to public employees, and plaintiffs are barred from asserting intentional tort claims based on defendants' action in this context.

More importantly, were we to adopt plaintiffs' misreading of the GTLA, we would fatally undermine the statute, and ironically cause it to suffer the same fate as the hollowed-out common-law rule it was enacted to replace. Again, plaintiffs say that intentional torts, by definition, cannot be governmental functions. Because the GTLA states that any act committed outside the exercise or discharge of a governmental function is not subject to immunity from tort liability, future plaintiffs would only need to assert a governmental defendant committed an intentional tort to abrogate the GTLA's grant of immunity and continue their suit.[21]

---

into the alleged agreement.) Nevertheless, the existence of MCL 124.75, when viewed in light of the longstanding statutory authority of governmental entities to purchase health insurance for their employees, is further evidence of the fact that defendants were engaged in the discharge of a governmental function when they made and administered the group-insurance agreement with plaintiffs.

[19] See n 18, supra.

[20] *Ward*, 287 Mich App at 84.

[21] This would be incredibly easy to do, because almost any action can be reframed as an intentional tort. For example, physical violence against an individual can be framed as a tort (assault) or a crime (criminal assault). In the same fashion, plaintiffs' own suit transforms an otherwise valid contractual claim against governmental defendants into an *invalid* intentional tort claim against governmental defendants.

Under plaintiffs' theory, then, intentional torts become a judicially-created exception to the GTLA, and eviscerate the GTLA's general rule of governmental immunity from tort liability. History would thus repeat itself—just as common law governmental immunity was substantially eroded by judge-made exceptions, so too would its statutory heir. We will not interpret the GTLA in such a way that undermines the clear public policy choices of the Legislature. Again, the purpose of the GTLA is to limit governmental tort liability to specific, narrow, and enumerated categories.[22] As noted, the Legislature did not include intentional torts in the GTLA's stated exceptions.[23] It could have easily done so. Moreover, if a plaintiff's claims of wrongdoing have merit, he may use other legal avenues outside of tort law—criminal and contractual law—to pursue his claim.[24]

Accordingly, plaintiffs' intentional tort claims against defendant must be dismissed, and we reverse the trial court's unsupported holding that allowed those claims to proceed to trial.

## B. STATUTE OF LIMITATIONS

Again, we do not address the substantive merits of plaintiffs' claim for breach of contract, but only address the procedural question of whether equitable estoppel may be applied to negate the statute of limitations for plaintiffs' breach of contract claim. MCL 600.5807 states:

> No person may bring or maintain any action to recover damages or sums due for breach of contract, or to enforce the specific performance of any contract unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.
>
> * * *
>
> (8) The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract.

A "statute of limitations is a procedural, not substantive, rule, which will be upheld unless a party demonstrates that it is so harsh and unreasonable in its consequences that it effectively divests plaintiffs of access to the courts intended by the grant of the substantive right." *Hatcher v State Farm Mutual Auto Ins Co*, 269 Mich App 596, 606–607; 712 NW2d 744 (2005) (internal quotation marks and footnotes omitted). In rare circumstances, courts will recognize "the doctrine of equitable estoppel" as a "judicially created exception to the general rule that statutes of limitation run without interruption." *Cincinnati Ins Co v Citizens Ins Co*, 454 Mich 263, 270; 562 NW2d 648 (1997). A party that seeks to invoke equitable estoppel has a heavy burden and thus:

---

[22] *In re Bradley Estate*, 494 Mich at 378.

[23] *Harrison*, 194 Mich App at 450.

[24] *In re Bradley Estate*, 494 Mich at 388–389.

generally must establish that there has been (1) a false representation or concealment of a material fact, (2) an expectation that the other party will rely on the misconduct, and (3) knowledge of the actual facts on the part of the representing or concealing party. This Court has been reluctant to recognize an estoppel absent intentional *or negligent* conduct designed to induce a plaintiff to refrain from bringing a timely action. [*Id*. (Emphasis in original.)]

Here, plaintiffs have not come close to making a case for equitable estoppel to negate the statute of limitations under MCL 600.5807. As the trial court found, dispositively, at no time did defendants engage in a "false representation or concealment of a material fact." *Id*. In fact, the action of which plaintiffs complain—Genesee County's placement of the premium refund in the county's general fund—was a matter of public record. This transparency is the exact opposite of "concealment" and reveals that plaintiffs' request for equitable estoppel is simply a transparent and unavailing attempt to circumvent straightforward law.

The trial court correctly held that plaintiffs may not seek damages for breach of contract that accrued before October 24, 2005. On remand, plaintiffs may seek damages for the alleged breach of contract that accrued after that date.

## IV. CONCLUSION

Accordingly, we hold that the trial court erred when it denied defendants' request for summary disposition as to plaintiffs' intentional tort claims. Defendants are immune from tort liability under the GTLA, and plaintiffs' claims must be dismissed as a matter of law. We remand these claims to the trial court for entry of an order of dismissal.

We affirm the trial court's ruling that plaintiffs' breach of contract claim may not seek compensation for damages that accrued before October 24, 2005.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Mark T. Boonstra

-10-