FELLOWS v MICHIGAN COMMISSION FOR THE BLIND

Docket No. 313563. Submitted May 7, 2014, at Lansing. Decided May 20,
2014, at 9:05 a.m. Leave to appeal denied, 497 Mich ___.

Ronald Fellows petitioned in the Ingham Circuit Court for judicial
review of a final decision by the Michigan Commission for the
Blind (the Commission), which refused to award him monetary
damages resulting from a purported violation of the blind and
visually disabled persons act, MCL 393.351 *et seq.*, by the Com-
mission. Fellows, a blind man, operated vending machines and a
food service business from 2005 to 2008 at Cadillac Place, a
building leased by the state of Michigan. He did so in accordance
with the act, which requires that concessions in buildings owned
or occupied by the state be operated by a blind person. Three other
concessions, run by sighted persons, also operated in the building.
The other concessions were already operating in the building when
the state leased it, and the state allowed these vendors to continue
operating under their lease agreements. Fellows complained to the
Commission's Business Enterprise Program, asserting that one of
the other concessions, Star Pharmacy, was taking away business
that was rightfully his. The program's agent determined that it
could not address Fellows's complaint because Star Pharmacy had
a valid lease. Fellows sought administrative review, asking that the
Commission (1) advise blind operators of the efforts the Commis-
sion made on their behalf, (2) inform other state agencies in
Cadillac Place of the rules governing food service and catering, (3)
help resolve his conflict with Star Pharmacy, and (4) bar adver-
tisements for outside catering companies in Cadillac Place. When
the administrative review failed to resolve Fellows's concerns, he
sought a contested case hearing. The hearing officer recommended
dismissal of the complaint. The Commission rejected the recom-
mendation and remanded the case to the hearing officer for an
evidentiary hearing to determine any damages that Fellows may
have suffered. At the hearing, Fellows asserted that the Commis-
sion had breached a vending facility agreement, misrepresented
the existing competition at Cadillac Place, and illegally allowed
sighted persons to operate in the building. Fellows claimed entitle-
ment to $475,576 in damages. The hearing officer recommended
that the Commission determine an appropriate amount of dam-

ages in light of the evidence presented at the hearing. After reviewing the recommendation of the hearing officer, the Commission refused to award Fellows damages. Fellows petitioned for judicial review in the Ingham Circuit Court, Paula J. Manderfield, J., which reversed the decision of the Commission and awarded Fellows $475,576 in damages. The Commission sought leave to appeal, which the Court of Appeals granted.

The Court of Appeals *held*:

Administrative agencies are a creation of the Legislature, and their powers are limited to those that the Legislature chooses to delegate to them through statute. Under MCL 393.358, the Commission, pursuant to state-federal agreements: may cooperate with the federal government in carrying out the purposes of a federal statute or regulation, not in conflict with state law, which pertains to rehabilitation of blind persons; may adopt methods of administration, not in conflict with state law, which are necessary for the proper and efficient operation of the agreements or plans for rehabilitation of blind persons; and may comply with conditions, not in conflict with state law, which are necessary to secure the full benefits of federal statute. Contrary to Fellows's assertion, MCL 393.358 does not authorize the Commission to award monetary damages. The statute does not expressly delegate to the Commission the power to award monetary damages, and the statute only applies to state-federal agreements and, therefore, was irrelevant to Fellows's case. Further, the Commission could not infer the authority to award monetary damages because such an award is not necessary to the due and efficient exercise of the powers expressly granted to the Commission by the blind and visually disabled persons act, MCL 393.351 *et seq*. Because the act does not grant the Commission the authority to award monetary damages, Fellows's claim had to be rejected.

Decision of the Ingham Circuit Court reversed, and Fellows's claim dismissed.

ADMINISTRATIVE LAW — MICHIGAN COMMISSION FOR THE BLIND — MONETARY DAMAGES.

Administrative agencies are a creation of the Legislature, and their powers are limited to those that the Legislature chooses to delegate to them through statute; the blind and visually disabled persons act, MCL 393.351 *et seq.*, does not expressly authorize the Michigan Commission for the Blind to award monetary damages for violations of the act, and the commission cannot infer the authority to award monetary damages.

*Mark E. Kamar* and *Gerald J. Cichocki* for Ronald Fellows.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Thomas D. Warren* and *Christopher W. Braverman*, Assistant Attorneys General, for the Michigan Commission for the Blind.

Before: FITZGERALD, P.J., and SAAD and WHITBECK, JJ.

SAAD, J.

### I. NATURE OF THE CASE

This case involves an issue of first impression: namely, the proper interpretation of the Michigan blind and visually disabled person's act (the Act), MCL 393.351 *et seq.* Among other things, the Act created respondent, the Michigan Commission for the Blind (the Commission),[1] an administrative agency to which the Legislature delegated certain powers. This dispute is about the extent of those powers—specifically, whether the Legislature granted the Commission the

---

[1] In June 2012, Governor Snyder issued Executive Order No. 2012-5, now codified at MCL 445.2033, which reconstituted the Commission as a constituent part of the newly created Bureau of Services for Blind Persons (the Bureau) within the Department of Licensing and Regulatory Affairs. In addition to transferring the Commission's powers under MCL 393.351 *et seq.* to the Bureau, the executive order also granted the Bureau other statutory authority that is not relevant to this case. See MCL 445.2033. Though petitioner makes no mention of the executive order or the changes it made to the Commission's structure (despite the fact that the Governor issued the executive order more than a year before petitioner filed his brief), his action is not moot, because the executive order provided that suits commenced against the Commission before the order's effective date could be maintained against the Commission's "appropriate successor." MCL 445.2033(X)(B).

ability to award monetary damages to aggrieved claimants. Petitioner, a blind man who operated a concession at the Cadillac Place state office building, claims the Act implies that the Commission has the power to award monetary damages; the Commission says petitioner's reading of the Act is incorrect, and that the Act does not permit it to award monetary damages.

We agree with the Commission, and hold that it does not have the power to award monetary damages to claimants, including petitioner. The powers of an administrative agency are limited to: (1) express powers (i.e., powers that are expressly granted by the Legislature in the language of the enabling statute); and (2) implied powers (i.e., powers that are necessary to the due and efficient exercise of the powers expressly granted by the enabling statute). Because no part of the Act expressly grants the Commission the authority to award monetary damages, and because that authority is not necessary to the due and efficient exercise of the powers expressly granted by the Act, the Commission does not have the power to award monetary damages.

Accordingly, the holding of the trial court, which stated that the Commission had the power to award petitioner monetary damages, is hereby reversed and petitioner's claim is dismissed.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner, Ronald Fellows, is blind and operated vending machines and a coffee shop at Cadillac Place from 2005 to 2008. He did so pursuant to the Act, which mandates that a concession "in a building or on property owned or occupied" by the state "shall be operated by a blind person . . . ." MCL 393.359. At the time the

state took occupancy of Cadillac Place,[2] three concessions run by sighted vendors also operated in the building: Star Pharmacy, Subway, and Blend Café.[3] When it occupied Cadillac Place, the state allowed these vendors to continue to operate under their old lease agreements.

---

[2] In 1999, General Motors sold the building to New Center Development, Inc., which then leased the building to the state. New Center Development sold the building to the Michigan Strategic Fund, a state agency, in 2011.

[3] Though petitioner characterizes the presence of these other businesses as "illegal," it is not at all clear that the Commission violated any of its statutory obligations by allowing sighted persons to operate concessions in Cadillac Place. As noted, MCL 393.359 states that "[a] concession in a building . . . owned or occupied by this state shall be operated by a blind person . . . except in cases provided for in [MCL 393.360]." This exception provides that: "[a] sighted person operating a concession under contract or lease at the time this act becomes effective [October 1, 1978] shall not be required to surrender the rights before the contract or lease expires." MCL 393.360(2).

Petitioner's argument, then, which seems to suggest that the state should throw out any concessions not run by a blind person, is not necessarily the correct interpretation of the Act. Further, the Act does not contemplate the particular set of facts involved here: when the state leases a private building (Cadillac Place) in a year after 1978 (1999), and that building has existing concessions run by sighted persons under leases that may have been agreed to *after* 1978. Though the Legislature did not contemplate this scenario in MCL 393.360(2), that subsection's preservation of already existing sighted-operator leases indicates that the Legislature would not have wanted to break the type of leases involved here. This position is also common sense: breaking such leases would violate the contractual rights of sighted concession operators, and cost the state an enormous amount of money in litigation fees and damages.

This issue is irrelevant to our determination of this case, as petitioner's claim seeks only monetary damages from the Commission, not the eviction from Cadillac Place of concessions operated by sighted persons, or a declaratory judgment that the Commission's actions violated MCL 393.351 *et seq*. But it is important to note that the basis of petitioner's claim—that the Commission did something "illegal" by permitting sighted persons to operate concessions—might be incorrect.

Petitioner did not like the competition he received from Star Pharmacy, which apparently sold similar food items as his café. He complained to the Commission's Business Enterprise Program (BEP),[4] and alleged that Star Pharmacy was taking away business that was rightfully his. After reviewing his complaint, the BEP's agent determined that it could not address petitioner's demands, because Star Pharmacy had a valid lease. Petitioner then sought administrative review, and asked that the Commission: (1) advise blind operators of the efforts the Commission made on their behalf, (2) inform other state agencies in Cadillac Place of the rules governing food service and catering, (3) help resolve his conflict with Star Pharmacy, and (4) bar advertisements for outside catering companies in Cadillac Place. He did not request monetary damages.

When the BEP's internal administrative review failed to resolve his claim, petitioner sought a contested hearing before a hearing officer pursuant to MCL 393.355(g) and Mich Admin Code, R 393.56, and made the same demands that he had made during the administrative review process. Again, he did not ask for monetary damages. The hearing officer heard the case in 2010 and recommended dismissal of petitioner's complaint. He noted that petitioner had ceased operation of his café, and that the issue was now moot. In the alternative, he suggested the Commission's board find for the Commission, because it had taken all appropriate steps to address the business competition of which petitioner complained.

The Commission's board rejected the hearing officer's recommendations, and instead remanded the mat-

---

[4] The BEP ran the leasing program for blind vendors at state-owned and state-occupied buildings.

ter to the hearing officer "for a full evidentiary hearing to determine damages Mr. Fellows may have suffered at Cadillac Place." This was the first time the question of damages was mentioned.

Petitioner then received a second contested hearing before a hearing officer. The BEP moved to dismiss the case because: (1) the hearing officer had no jurisdiction to award damages, and (2) petitioner never claimed damages. The hearing officer did not rule on the BEP's motion to dismiss. Petitioner, now represented by an attorney, alleged that the Commission had breached a "vending facility agreement" and misrepresented the existing competition at Cadillac Place to induce him to open his business.[5] He also asserted that the Commission "illegally" allowed sighted vendors to operate in the building, which supposedly reduced his potential profits for three years, and demanded $475,576 in damages.

The hearing, which took place in 2011, was not a model of proper procedure. The hearing officer heard no testimony; no representatives of the Commission were present; and the only evidence received was a copy of the Star Pharmacy lease, some sales reports from petitioner, Subway, and Star Snack, and an affidavit concerning Subway's business records. The hearing officer made no findings on whether a breach of contract, misrepresentation, or any other misconduct occurred, but it nonetheless recommended that the Com-

---

[5] Petitioner provides no evidence that he actually had a "vending facility agreement" with the Commission, nor has he provided any evidence of misrepresentation or fraud on the part of the Commission. In any event, he appears to have abandoned these contract claims on appeal, because he does not assert them in his brief. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position.").

mission "determine an appropriate amount of damages in this matter based on the evidence presented at the hearing."

When the matter returned to the Commission's board in March 2012, the board refused to award petitioner damages. Petitioner appealed in the Ingham Circuit Court, which reversed the board's decision and awarded petitioner $475,576 in damages. The court rejected the Commission's argument that the Commission lacked jurisdiction to award monetary damages, on the grounds that "such power is clearly necessary for the proper and efficient operation of BEP agreements." In support of its theory, the court cited one administrative decision in which the board had awarded monetary damages to a blind licensee, and claimed that MCL 393.358 implied that the board had the authority to do so. Further, the court stated that the board's decision not to award damages was arbitrary and capricious, holding that the board had "implicitly" admitted its own liability for failing to curtail competition when it remanded for a hearing on damages.

The Commission appealed the trial court's order to our Court in late 2013, and argues that it should be reversed because: (1) as an administrative entity, it does not have express statutory authority to award monetary damages, nor does it have the implied power to do so; and (2) its refusal to award damages thus cannot be arbitrary and capricious.

### III. STANDARD OF REVIEW

When we analyze an appeal of a trial court's review of an agency decision, we afford "[g]reat deference . . . to the [trial court's] review of the agency's factual findings." *Romulus v Dep't of Environmental Quality*, 260 Mich App 54, 62; 678 NW2d 444 (2003). But "substan-

tially less deference, if any, is [afforded] to the [trial court's] determinations on matters of law." *Id.* "Questions of statutory interpretation are reviewed de novo," *Petersen v Magna Corp*, 484 Mich 300, 351; 773 NW2d 564 (2009), and our analysis of the trial court's determination of the law looks to "whether the [trial] court applied correct legal principles," *Romulus*, 260 Mich App at 64 (quotation marks and citation omitted).

Our Court's "objective when interpreting a statute is to discern and give effect to the intent of the Legislature." *Book-Gilbert v Greenleaf*, 302 Mich App 538, 541; 840 NW2d 743 (2013). "When ascertaining the Legislature's intent, a reviewing court should focus first on the plain language of the statute in question, and when the language of the statute is unambiguous, it must be enforced as written." *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 560; 837 NW2d 244 (2013) (citation omitted). "An agency's decision that is in violation of statute or constitution [or] in excess of the statutory authority or jurisdiction of the agency . . . is a decision that is *not* authorized by law and must be set aside." *Romulus*, 260 Mich App at 64 (quotation marks, citations, and alteration marks omitted).

### IV. ANALYSIS

Administrative agencies are a creation of the Legislature, and their powers are accordingly limited to those that the Legislature chooses to delegate to them through statute. *York v Detroit (After Remand)*, 438 Mich 744, 767; 475 NW2d 346 (1991). The statutory language conferring such powers must be "clear and unmistakable" and is subject to "strict interpretation." *Herrick Dist Library v Library of Mich*, 293 Mich App 571, 583; 810 NW2d 110 (2011) (quotation marks and citation omitted). Though it is possible for an adminis-

trative agency to possess implied powers, it can only infer such authority when that authority is " 'necessary to the due and efficient exercise of the powers expressly granted' by the enabling statute." *Id.* at 586, quoting *Ranke v Corp & Securities Comm*, 317 Mich 304, 309; 26 NW2d 898 (1947).

In this case, petitioner brings suit against an administrative agency (the Michigan Commission for the Blind) created by an enabling act (MCL 393.351 *et seq.*). Petitioner asserts, and the trial court agreed, that this act gives the Commission the power to award monetary damages to claimants. Specifically, petitioner points to MCL 393.358 as the basis for this supposed delegation of authority, a rationale the trial court adopted in its holding.

Petitioner's argument distorts the law, because MCL 393.358 does not in any way authorize the Commission to award monetary damages. In full, that section reads:

> The commission, *pursuant to state-federal agreements*: may cooperate with the federal government in carrying out the purposes of a federal statute or regulation, not in conflict with state law, which pertains to rehabilitation of blind persons; may adopt methods of administration, not in conflict with state law, which are necessary for the proper and efficient operation of the agreements or plans for rehabilitation of blind persons; and may comply with conditions, not in conflict with state law, which are necessary to secure the full benefits of federal statute. [MCL 393.358 (emphasis added).]

MCL 393.358 neither expressly delegates the power to the Commission to award monetary damages, nor does it allow the Commission to infer such authority, because the award of monetary damages is not " 'necessary to the due and efficient exercise of the powers expressly granted by the enabling statute.' " *Herrick*, 293 Mich App at 586 (citation omitted). Moreover, MCL 393.358 is not rel-

evant to petitioner's case, because, by its plain language, it only applies to "state-federal agreements" between the Commission and the federal government. As the Commission correctly observes, this suit does not involve a "state-federal agreement"—it involves a state-owned office building and a concession operated by a private citizen. And finally, no other section of the Act, expressly or by implication, grants the Commission the power to award monetary damages to claimants.[6]

Perhaps aware of the dubious nature of his statutory claim, petitioner avers that the Commission has awarded monetary damages in the past, and suggests that this practice serves as additional justification for a monetary award to him.[7] This argument is unconvincing. Courts "are not bound by an administrative agency's interpretation of a statute . . . ." *TMW Enterprises Inc v Dep't of Treasury*, 285 Mich App 167, 178; 775 NW2d 342 (2009). Rather, a reviewing court gives an agency's interpretation of a statute "respectful consideration" and must state "cogent reasons for overruling an agency's interpretation"; the agency's interpretation

---

[6] Because the Commission lacks the power to award monetary damages, its refusal to do so cannot be arbitrary and capricious.

[7] Petitioner fails to make the most obvious nonstatutory argument: namely, if the Act does not allow the Commission to award monetary damages, it confers a right without a remedy, in that blind concession operators are unable to enforce the rights granted by the Act in a meaningful way. This argument, however, is incorrect, because the Legislature required the promulgation of rules to implement the Act, and those rules provide a remedy in the event that a blind person believes the Act has been violated: an extensive administrative process that allows Commission employees to assist blind concession owners in dispute resolution. See MCL 393.355(g) and Mich Admin Code, R 393.1 *et seq.* Petitioner made use of this remedy when he availed himself of the Commission's extensive administrative process. In addition, other remedies besides monetary damages are available to petitioners that seek redress under the Act: declaratory judgment and injunctive relief.

"is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 103; 754 NW2d 259 (2008) (quotation marks omitted). The fact that the Commission exceeded its legal authority in the past is no reason for our Court to sanction continued abuse of that authority in the present. The Commission properly ended its improper and unauthorized exercise of authority with its decision in this case, and now correctly limits its powers to those delegated by the Legislature. Again: the Act does not grant the Commission the authority to award monetary damages, and for this reason alone, petitioner's claim must fail.

### V. CONCLUSION

The trial court misinterpreted the Act because the Commission does not have the authority, express or implied, to award monetary damages. We therefore reverse the holding of the trial court and petitioner's claim is hereby dismissed.

FITZGERALD, P.J., and WHITBECK, J., concurred with SAAD, J.