# STATE OF MICHIGAN

# COURT OF APPEALS

PONTIAC SCHOOL DISTRICT,

UNPUBLISHED
September 15, 2015

Respondent-Appellee,

v

No. 321221
MERC
LC No. 12-000646

PONTIAC EDUCATION ASSOCIATION,

Charging Party-Appellant.

Before:  BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Charging party, Pontiac Education Association (the "Association"), appeals as of right an order issued by the Michigan Employment Relations Commission ("MERC") dismissing two of the Association's unfair labor practice charges against respondent, Pontiac School District.[1]  For the reasons set forth in this opinion, we affirm.

## I.  BACKGROUND.

On August 31, 2011, the collective bargaining agreement (CBA) between the parties expired and the parties entered into negotiations for a successor agreement.  In December of that same year, the Association learned that a questionnaire was being distributed to students eliciting students' opinions relative to members of the Association.  The Association sent an e-mail inquiry to Kelley Williams, interim associate superintendent, requesting information regarding the nature of the questionnaire.  Williams' reply e-mail stated:

> Please see the attached document that explains the required student perception survey information for AdvanceEd.  It is a directive that has been provided to teachers to administer the surveys.  This is not the first year this has been asked for students to complete.

---

[1] The Assoication initially filed a four-count complaint against respondent but withdrew Counts I and III.

-1-

The attachment was a document providing instructions for implementing the Michigan Department of Education's "School Data Profile/Analysis" (SDP/A) "and student perception data." The document states that the "Model of Process Cycle for School Improvement" would provide "the foundation to address school improvement and promote student achievement through a comprehensive and systemic approach" consisting of gathering data, analyzing the data, developing a school improvement plan, and implementing and monitoring the plan. The SDP/A included 12 components, including "perception data." The document stated that the SDP/A would be in compliance with federal grant requirements. Nothing in the document indicates that the data would be used to evaluate teacher performance. The document also omits any discussion of duties that would be assigned to teachers in relation to the questionnaires.

The Association, through an affidavit from Aimee McKeever, alleged that "Respondent Pontiac represented to Affiant personally that the input of student perceptions was not for the purpose of evaluations of the Members of the Charging Party Association, but instead was a statutory requirement." McKeever also stated that the questionnaire requirement "materially alters the Charging Party Association's Members' job duties because it requires the distribution, collection, summation and reporting of each and every evaluation for each student on a weekly basis."

The distribution and collection of student questionnaires formed the basis for count II of the Association's complaint. Count II, entitled "Unilateral Change to a Mandatory Subject of Bargaining (Student Evaluations)," stated in its entirety as follows:

> G. At the beginning of the 2011-2012 school year, the Respondent Pontiac issued documents that purported to allow students to have input into the performance of the Charging Party Association's Members.
>
> H. The Respondent Pontiac did not raise this issue during bargaining, the parties never discussed it, and there was no agreement to its terms.

Respondent moved for summary disposition, arguing that the questionnaires were related to employee performance evaluation, which was a prohibited subject of bargaining under MCL 423.215(3)(j). The Association argued in response that respondent's interim associate superintendent had denied that the questionnaire would be used in evaluating teacher performance. The administrative law judge (ALJ) granted summary disposition for respondent on the ground that the Association failed to demonstrate that the questionnaires regarded a mandatory subject of bargaining under MCL 423.215(1). The MERC affirmed the ALJ in its opinion and order dated March 17, 2014.

The Association also alleged that in December 2011, when respondent reduced staff, it eliminated the position held by Janet Threlkeld-Brown, a special education teacher. Consistent with the parties' past procedures, Threlkeld-Brown's seniority with respondent entitled her to select an assignment from available vacancies. She selected an assignment at the middle school. Threlkeld-Brown was scheduled to begin the new assignment on January 20, 2012. She prepared for her new assignment during the week of January 16, 2012. Threlkeld-Brown stated in her

affidavit that she met with Shana Jackson, the building principal, on January 23, 2012. Jackson confronted Threlkeld-Brown with "false accusations" of inappropriate conduct, which Threlkeld-Brown denied.[2] In Threlkeld-Brown's words, "the Respondent Pontiac directed the Affiant to return to the office, and Dr. [Jacqueline] McDougal [executive director of special services] declared that Human Resources would make the decision." A half-hour later, McDougal informed Threlkeld-Brown that she was reassigned to the high school for the remainder of the 2011-2012 school year. Donna Dulaney, interim associate superintendent of human resources, notified Threlkeld-Brown that she was being involuntarily transferred to Pontiac High School.

Based on these actions, the Association alleged in Count IV that respondent violated the parties' past practices by unilaterally reassigning Janice Threlkeld-Brown, a special education teacher who was laid off as part of a workforce reduction, but who exercised her seniority rights by selecting a vacant position in a middle school. The Association contended that the parties' past practice permitted unilateral transfers only in the context of a reduction in force, and not for disciplinary reasons. Respondent moved for summary disposition on the ground that Threlkeld-Brown's reassignment involved a matter of teacher placement, which was a prohibited subject of bargaining under MCL 423.215(3)(j). The ALJ agreed and granted summary disposition for respondent. The MERC affirmed the ALJ's decision and dismissed both remaining unfair labor practice charges in its March 17, 2014 decision and order.

## II. STANDARD OF REVIEW

The decisions of the MERC are reviewed on appeal pursuant to Const 1963, art 6, § 28, and MCL 423.216(e). The commission's findings of fact are conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole. *Port Huron Ed Ass'n* v *Port Huron Area School Dist*, 452 Mich 309, 322; 550 NW2d 228 (1996). The MERC's legal determinations may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law. MCL 24.306(1)(a),(f). *Grandville Mun Exec Ass'n v City of Grandville*, 453 Mich 428, 436; 553 NW2d 917 (1996). See also, *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Mich Transp Auth*, 437 Mich 441, 450; 473 NW2d 249 (1991). The Michigan Administrative Code provides grounds for summary disposition in administrative proceedings, which include failure to state a claim for relief, and the absence of a genuine issue of material fact. Mich Admin Code R 423.165(2)(d) and (f). Because these provisions parallel summary disposition motions under MCR 2.116(C)(8) and (10), respectively, established standards for reviewing motions under those subrules may be applied by analogy.

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden*, 461 Mich at 119 (citation and internal quotation omitted). A motion under MCR 2.116(C)(10) tests the factual sufficiency of

---

[2] The alleged inappropriate conduct apparently related to Threlkeld-Brown's review of her new students' records.

the complaint. *Maiden*, 461 Mich at 120. When deciding a motion under MCR 2.116(C)(10), a trial court may consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the nonmoving party. *Id.* "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id.* A genuine issue of material fact exists when viewed in the light most favorable to the non-moving party, reasonable minds could differ on an issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

This case also involves questions of statutory interpretation, which are reviewed de novo. *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 707; 664 NW2d 193 (2003).

## III. ANALYSIS

### A. STUDENT QUESTIONNAIRES

The question whether the student questionnaires are a mandatory subject of bargaining is governed by the PERA, specifically § 15, as amended by 2011 PA 103. "When ascertaining the Legislature's intent, a reviewing court should focus first on the plain language of the statute in question, and when the language of the statute is unambiguous, it must be enforced as written." *Fellows v Mich Comm for the Blind*, 305 Mich App 289, 297; 854 NW2d 482 (2014), lv den 497 Mich 890 (2014). "A court does not construe the meaning of statutory terms in a vacuum. Rather, we interpret the words in their context and with a view to their place in the overall statutory scheme." *Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008) (internal citations and quotation marks omitted).

Section 15 of the PERA, MCL 423.215(1), "requires a public employer to bargain collectively with the recognized representatives of its public employees." *Southfield Police Officers Ass'n v City of Southfield*, 433 Mich 168, 177; 445 NW2d 98 (1989). "Certain issues including 'wages, hours, and other terms and conditions of employment' are considered to be mandatory subjects of collective bargaining." *Id.*, quoting MCL 423.215(1). "Issues falling outside this category are classified as either permissive or illegal subjects of bargaining." *Southfield Police Officers Ass'n*, 433 Mich at 178. "The determination of what constitutes a mandatory subject of bargaining under the PERA is to be decided case by case." *Id.* The Association argues that McKeever's affidavit, averring that the interim associate superintendent advised her that the questionnaire would not be used for employee performance evaluations, provided sufficient evidence to withstand summary disposition. It argues that the ALJ and the MERC erred in finding that it did not provide evidence in support of this charge. Respondent argues in response that the Association failed to properly plead that the questionnaire involved a mandatory subject of bargaining, and that it also failed to submit evidence to establish a genuine issue of material fact on the issue.

In her decision and recommended order, the ALJ stated that respondent "had no duty to bargain over a decision to include student input as part of its evaluation of teacher performance." She further concluded that the Association failed to establish a genuine issue of material fact that the questionnaire involved job duties and conditions of employment:

In Charging Party's response to the motion, it asserts that Respondent explicitly told it that the purpose of the student questionnaires was not to evaluate the performance of individual teachers. Charging Party points out that Respondent gave Charging Party a document which seems to suggest that the questionnaires would be used only to assess students' aggregate perception of their teachers' performance, an assessment that Respondent was required to make as part of its performance improvement plan. If that was, in fact, the case, it is not clear why the questionnaire asked students for the names of their teachers. In any case, after the passage of 2011 PA 103, Respondent no longer had a duty to bargain with Charging Party over any decision to use students' perceptions in its evaluation of teacher performance. The problem with Charging Party's response to the motion is that it has not provided an explanation for why, if the questionnaire was not to be used for evaluating teacher performance, the distribution of the questionnaire affected teachers' wages, hours, or terms and conditions of employment. I conclude that the student questionnaire was not a mandatory subject of bargaining, and that Respondent had no duty to bargain over its content or distribution.

In her recommended order, the ALJ again cited the School Data/Profile Analysis, which indicated that student's "perception data" was one of 12 components in developing and monitoring a school improvement plan. With respect to the Association's attempt to prove that the questionnaires would be used for a purpose other than evaluating teacher performance, the ALJ stated:

The problem with Charging Party's response to the motion is that it has not provided an explanation for why, if the questionnaire was not to be used for evaluating teacher performance, the questionnaire affected teachers' wages, hours, or terms and conditions of employment. I conclude that the student questionnaire was not a mandatory subject of bargaining, and that Respondent had no duty to bargain over its content or distribution. I conclude, therefore, that Respondent did not commit an unfair labor practice by failing to give Charging Party an opportunity to bargain over the questionnaires before distributing them to students.

The MERC found that the Association failed to amend its complaint to include an allegation that the questionnaires significantly increased employees' duties, although it might have done so in its response to the ALJ's order to show cause, and in its brief in opposition to respondent's summary disposition motion. The MERC explained that it affirmed the ALJ's decision because the Association did not state in its charge that the questionnaire expanded employee job duties, and it did not amend the charge to allege that the questionnaire caused a significant increase in the employees' duties. The MERC did not agree that McKeever's affidavit supported this charge because "these allegations appear to be part of Charging Party's efforts to substantiate Count III of the charge . . . ." The MERC's decision states that "[i]f there is a connection between the facts alleged regarding the weekly progress reports, discussed in Count III, and student questionnaires, raised in Count II, that connection should have been raised in the charge . . . at some point prior to Charging Party's withdrawal of Counts I and III."

-5-

On the last point, the MERC's decision is problematic because it erroneously presumes that McKeever's affidavit pertained only to Count III, although ¶ 10 of the affidavit clearly pertains to the questionnaires. Additionally, the MERC did not explain how an evidentiary hearing on Count III could provide evidence for Count II, which was dismissed on summary disposition. The MERC's indication that the Association might have used its response to the show cause order as an opportunity to amend its charge by adding allegations that the questionnaire sufficiently increased teachers' job duties fails to take into consideration that the show-cause order pertained only to the timeliness of the charges, not the sufficiency of the allegations. However, despite these errors in its analysis, the MERC properly dismissed Count II.

Although the Association emphasized that Respondent denied that the questionnaires would be used in teacher evaluation, such a finding was not the sole basis of either the ALJ's or the MERC's decision.[3] Neither the ALJ nor the MERC made their decisions solely on the basis that the student questionnaires were part of the evaluation process, and therefore, a prohibited subject of bargaining under MCL 423.215(3)(l). In fact, questioning the Respondent's claim that the questionnaires were not part of the evaluation process, the ALJ wondered why the questionnaires requested the teacher's name if they were unrelated to employee performance evaluation. Similarly, the MERC's decision was based on the Association's failure to allege facts, or submit evidence, in support of its argument that the questionnaires increased workload. The Association, being the Charging Party, had the burden of proof as to whether the questionnaires would increase the workload of their members such that the questionnaires became a mandatory subject of bargaining as they directly related to a term or condition of employment. We concur with the findings of the MERC that the two-paragraph allegations set forth in Count II failed to provide a legally sufficient basis to support the Association's claim that implementation of the questionnaires constituted an increase in workload such that it became a mandatory subject of bargaining. Simply stated, the Association failed to meets its burden of proof. Accordingly, the Association is not entitled to relief on this issue.

The Association further argues that the student questionnaires could not have been related to teacher performance evaluation because performance evaluations are governed by the teacher tenure act, MCL 380.1249. However, this argument is based on the erroneous premise that Count II was dismissed solely on the basis that the questionnaires were part of the teacher evaluation process, a prohibited subject of bargaining. As noted above, the MERC also concluded that the Association had failed to provide a sufficient factual basis for a finding that the distribution and gathering of student questionnaires constituted a mandatory subject of bargaining.

---

[3] While the MERC focused primarily on the Association's apparent alteration of their argument as to whether the student evaluations constituted part of the teacher evaluation process, it is apparent that during the pendency of these proceedings, both parties altered their arguments to conform to changes set forth in PERA.

The Association also argues that respondent was required to comply with the existing collective bargaining agreement. MCL 380.1248(1), a provision of the teacher tenure act, governs recall of staff following a reduction in staff. MCL 380.1248(2) provides:

> If a collective bargaining agreement is in effect for employees of a school district or intermediate school district as of the effective date of this section and if that collective bargaining agreement prevents compliance with subsection (1), then subsection (1) does not apply to that school district or intermediate school district until after the expiration of that collective bargaining agreement.

Section 15(3) of the Public Employee Relations Act ("PERA"), MCL 423.215(3), provides that "[c]ollective bargaining between a public school employer and a bargaining representative of its employees shall not include" certain enumerated subjects. MCL 423.215(4) provides that "the matters described in subsection (3) are prohibited subjects of bargaining between a public school employer and a bargaining representative . . . and, for the purposes of this act, are within the sole authority of the public school employer to decide." In 2011 PA 103, our Legislature amended MCL 423.215(3) to include additional prohibited subjects for collective bargaining, including the following subjects that are pertinent to this appeal:

> (j) Any decision made by the public school employer regarding the placement of teachers, or the impact of that decision on an individual employee or the bargaining unit.

> (k) Decisions about the development, content, standards, procedures, adoption, and implementation of the public school employer's policies regarding personnel decisions when conducting a reduction in force . . . .

> (l) Decisions about the development, content, standards, procedures, adoption, and implementation of a public school employer's performance evaluation system . . . .

This amendment became immediately effective on July 19, 2011. As previously noted, the parties' most recent CBA expired on August 31, 2011, and a new agreement had not yet been negotiated. The MERC concluded that following the enactment of "2011 PA 103, provisions of the parties' expired collective bargaining agreement . . . are no longer mandatory subjects of bargaining. Those provisions are now prohibited subjects of bargaining. The same is true of past practices that may have modified those parties' collective bargaining agreement . . . ." These legal pronouncements by the MERC do not offer citations to any legal authority. On appeal, the Association's argument to this portion of the MERC's holding is limited to a single paragraph. The Association cites this Court to *Gibraltar School District v Gibraltar MEPSA-Transportation*, 443 Mich 326, 334; 505 NW2d 214 (1993), for the proposition that the terms and conditions of an expired CBA remain in effect full until a new CBA is negotiated. However, in *Gibraltar*, our Supreme Court, in deciding whether, following the expiration of a CBA a successor union had standing to file grievances stated:

> In this case, the charging parties were certified after the expiration of the collective bargaining agreements. During this period, the terms and conditions of

employment are continued because of the statutory obligation to bargain, *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 54-55; 214 NW2d 803 (1974). Grievances that arise after certification of the new union depend on the statutory obligation, not the expired collective bargaining agreement. Any question concerning the authority of the newly certified union to enforce rights granted by the expired agreement is irrelevant. Thus, we reject the claim that the MESPA does not have standing to claim a statutory violation and file an unfair labor practice charge.

Consequently, and contrary to the assertions of the Association, the terms and conditions of a CBA continue based on the statutory obligation to bargain, not the content of the CBA. Left out of the analysis provided by our Supreme Court in *Gibraltar* is the central question presented as to the effect a legislative mandate that prohibits specific subjects of bargaining has on an expired agreement. *Grandville Mun Exec Ass'n*, 453 Mich at 436, MCL 24.306(1)(a) and (f) require the Association to present this Court evidence that the legal rulings of the MERC are in violation of the constitution or a statute, or affected by a substantial and material error of law. From the Association's brief, we can discern no such legal error, and given the complexity of the issue presented and the dearth of legal authority, we make no such finding other than to conclude that the Association has failed to provide a sufficient legal basis for this Court to reverse the MERC's legal conclusions relative to this issue. Therefore, we cannot find error mandating reversal of the MERC decision and order relative to the issues raised regarding the student questionnaires.

## B. REASSIGNMENT OF THRELKELD-BROWN

The Association also challenges the MERC's decision concerning count IV, Threlkeld-Brown's reassignment. For the reasons set forth more fully below, we discern no error in the decision reached by the MERC on this issue, and accordingly find that the Association is not entitled to relief on this issue.

MCL 423.215(3)(j) provides that "[a]ny decision made by the public school employer regarding teacher placement, or the impact of that decision on an individual employee or the bargaining unit" is a prohibited subject of bargaining. The Association does not argue that Threlkeld-Brown's transfer does not qualify as a "teacher placement" decision per se, but rather argues for the first time on appeal that it was not a teacher placement decision within the meaning of MCL 423.215(3)(j) because the decision was made by a school administrator, not a "public school employer." "In order to properly preserve an issue for appeal, it must be raised before, and addressed and decided by, the trial court." *Henderson v Dep't of Treasury*, 307 Mich App 1, 7-8; 858 NW2d 733 (2014) (citation and internal quotations omitted). Because this issue was not raised below or decided by the trial court, it is unpreserved. Unpreserved claims are reviewed for plain error, which "occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings." *Duray Dev, LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010).

MCL 423.201 provides the following relevant definitions:

(g) "Public school administrator" means a superintendent, assistant superintendent, chief business official, principal, or assistant principal employed by a school district, intermediate school district, or public school academy.

(h) "Public school employer" means a public employer that is the board of a school district, intermediate school district, or public school academy; is the chief executive officer of a school district in which a school reform board is in place under part 5A of the revised school code, 1976 PA 451, MCL 380.371 to 380.376; or is the governing board of a joint endeavor or consortium consisting of any combination of school districts, intermediate school districts, or public school academies.

With the exception of the chief executive officer in the context of a school reform board, all of the definitions of "public school employer" refer to governmental entities: "the board of a school district, intermediate school district, or public academy, and the governing board of a "joint endeavor or consortium." A government entity can only act through its agents. Placement decisions in relation to § 15(3)(j) will necessarily be made by school administrators. There is no allegation or evidence that the administrator who transferred Threlkeld-Brown lacked the authority to make that decision on behalf of the public school employer. Accordingly, the Association has not established a plain error.

The Association also reiterates that respondent was bound by the terms and past practices under the CBA until it affirmatively issued new procedures in accordance with the PERA and teacher tenure act amendments. As previously indicated, the parties' CBA had expired. Also as previously stated, the Association fails to meet its burden of demonstrating how the MERC's decision on this issue was affected by a substantial or material error of law. *Grandville Mun Exec Ass'n*, 453 Mich at 436, MCL 24.306(1)(a) and (f).

Affirmed. No costs are awarded to either party.

/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell

-9-